**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

JOHN F. JOHNSON, #R71062

   Plaintiff,

   v.

GHALIAH OBAISI, Independent Executor
of the Estate of SALEH OBAISI, deceased,
ALMA MARTIJA, and WEXFORD
HEALTH SOURCES, INC.,

   Defendants.

No. 1:18-cv-01204

Judge Matthew F. Kennelly
Magistrate Judge Jeffrey Cole

**WEXFORD HEALTH SOURCES, INC.'S ANSWER TO AMENDED COMPLAINT**

NOW COME Defendant WEXFORD HEALTH SOURCES, INC., by and through its attorneys, BOLLINGER, CONNOLLY & KRAUSE, LLC, and for its answer to Plaintiff's Amended Complaint (Dkt. 64), state the following:

**NATURE OF THIS ACTION**

1. This is a claim under 42 U.S.C. § 1983 for a violation of Plaintiff's civil rights as protected by the Eighth and Fourteenth Amendments to the Constitution of the United States. Defendants Martija, Obaisi, and Wexford acted with deliberate and conscious indifference to Plaintiff's serious medical conditions, by failing to provide adequate medical care and/or by delaying in providing adequate medical care, which has caused and continues to cause harm to Plaintiff.

**ANSWER:** Defendant admits that this action is purported to be brought by the Eighth and Fourteenth Amendments to the Constitution of the United States under 42 U.S.C. § 1983. Defendant denies violating Plaintiff's civil rights. Defendant denies deliberate or conscious indifference. Defendant denies that Plaintiff has a serious medical condition. Defendant denies

1

failing to provide adequate medical care. Defendant denies delaying in providing adequate medical care. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations against the other defendants. Defendant denies the remaining allegations of this paragraph.

2. Plaintiff seeks monetary damages against Defendants for *inter alia*, committing acts, which deprived Plaintiff of rights secured by the United States Constitution and the laws of the United States.

**ANSWER:** Defendant denies depriving Plaintiff of rights secured by the United States Constitution or any other law. Defendant admits that this action purports to seek monetary damages. Defendant denies that Plaintiff is entitled to any damages whatsoever.

3. Plaintiff seeks injunctive relief against Wexford, which has committed and continues to commit acts that deprive Plaintiff of rights secured by the United States Constitution and the laws of the United States.

**ANSWER:** Defendant admits that this action purports to seek injunctive relief. Defendant denies depriving Plaintiff of rights secured by the United States Constitution or any other law. Defendant denies that Plaintiff is entitled to injunctive relief.

## JURISDICTION AND VENUE

4. This action is brought in part under 42 U.S.C. § 1983 to redress the deprivation of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:** Defendant admits that this action is being brought pursuant to 42 U.S.C. § 1983. Defendant denies depriving Plaintiff of his constitutional rights.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

**ANSWER:** Defendant admits that this Court has jurisdiction to hear this matter.

2

6.      Monetary damages and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201, 2202, and 2284.

**ANSWER:** Defendant denies that Plaintiff is entitled to monetary damages, injunctive relief, or any other relief pursuant to 28 U.S.C. §§ 2201, 2202, and 2284.

7.      The claims asserted herein arose in the Northern District of Illinois and venue is therefore proper under 28 U.S.C. § 1391(b)(2).

**ANSWER:** Defendant admits that venue is proper.

8.      Plaintiff has filed grievances regarding these violations, attached hereto and incorporated herein by reference as **Exhibit A**. Through these grievances, he has exhausted any required administrative remedies.

**ANSWER:** Defendant admits that Exhibit A is attached. Defendant denies the facts and allegations in Exhibit A.  Defendant denies that Plaintiff has exhausted his administrative remedy under the Grievance Procedure.

## PARTIES

9.      Plaintiff John F. Johnson (#R71062) is a 51-year old male who is currently incarcerated at Danville Correctional Center ("Danville"). Plaintiff was transferred to Danville on or about December 5, 2018. Plaintiff was formerly incarcerated at Stateville Correctional Center ("Stateville") since October 3, 2010. While incarcerated, Plaintiff has been unable to select or provide for his own medical care.

**ANSWER:** Upon information and belief, Defendant admits that Plaintiff is currently an inmate incarcerated at Danville Correctional Center and was formerly incarcerated at Stateville Correctional Center.  Defendant denies the remaining allegations of this paragraph.

10. On information and belief, defendant Dr. Alma Martija is a physician licensed to practice medicine in the State of Illinois. At all relevant times herein, Dr. Martija was employed by defendant Wexford as a physician at Stateville, and was responsible for providing medical care to prisoners at Stateville. At all relevant times herein, Dr. Martija acted under color of state law and within the scope of her employment. Dr. Martija is sued in her individual and official capacities.

**ANSWER:** Defendant admits, upon information and belief, that Dr. Alma Martija is a physician licensed to practice medicine in Illinois. Defendant admits Dr. Martija was employed by Wexford, and at certain times Dr. Martija provided medical care to prisoners at Stateville. Defendant admits that Plaintiff's complaint purports to sue Dr. Martija in her individual and official capacities. Defendant admits that Dr. Martija acted within the scope of her employment. Defendant denies the remaining allegations contained in this paragraph.

11. Defendant Ghaliah Obaisi is the independent executor of the estate of Dr. Saleh Obaisi. Dr. Obaisi is deceased. (ECF Nos. 20, 28.) On information and belief, Dr. Obaisi was a physician licensed to practice medicine in the State of Illinois. At all relevant times herein, Dr. Obaisi was employed by defendant Wexford as a physician at Stateville and as medical director at Stateville, and was responsible for all health care provided by Wexford at Stateville during that time. He was also responsible for ensuring timely and efficient responses to inmates' health care needs, the creation, implementation, oversight and supervision of policies, practices and procedures regarding medical care at Stateville, the training of IDOC and Wexford staff at Stateville on providing medical care to prisoners, and providing prisoners access to medicine at Stateville. At all relevant times herein, Dr. Obaisi acted under color of state law and within the

4

scope of his employment. Ghaliah Obaisi, as independent executor of Dr. Obaisi's estate, is sued in his individual and official capacities.

**ANSWER:** Defendant admits, upon information and belief, that Dr. Obaisi was a physician licensed to practice medicine in Illinois. Defendant admits Dr. Obaisi was employed by Wexford, and at certain times Dr. Obaisi provided medical care to prisoners at Stateville. Defendant admits that Plaintiff's complaint purports to sue Ghaliah Obaisi as administrator of Dr. Obaisi's estate in his individual and official capacities. Defendant denies the remaining allegations contained in this paragraph.

12. Defendant Wexford Health Sources, Inc. is a for-profit corporation with its headquarters in Pennsylvania and which conducts business in the State of Illinois. Wexford contracts with the State of Illinois to provide medical services to inmates in the custody of the Illinois Department of Corrections ("IDOC") at its various facilities located throughout the state. At all relevant times herein, Wexford has been engaged in the practice of medicine through its contact with the IDOC at both Stateville and Danville, where it has been the exclusive provider of medical care for inmates incarcerated at these facilities including Plaintiff. Wexford was and is responsible for the implementation, oversight, and supervision of policies and practices regarding medical care at Stateville, Danville, and all other facilities within the IDOC.

**ANSWER:** Defendant admits that Wexford Health Sources, Inc. is a for profit corporation with headquarters in Pennsylvania and conducting business in Illinois. Wexford admits pursuant its contract that it is a healthcare provider for some prisons in Illinois to provide medical care to inmates. Defendant denies as a corporation that it practices medicine. Defendant denies *Respondeat Superior* as a claim or issue in this case. Defendant denies the remaining allegations contained in this paragraph.

5

## STATEMENT OF FACTS

### *General Background*

13.     Upon information and belief, IDOC prison facilities have a limited capacity to perform specialty medical testing or procedures on inmates.

**ANSWER:** Defendant denies the allegations in Paragraph 13.

14.     Upon information and belief, the Wexford doctors at Stateville and Danville are not certified specialists in neurology, orthopedics, oncology, or general surgery.

**ANSWER:** Defendant admits the allegations in Paragraph 14.

15.     Neither Stateville nor Danville have MRI equipment. Thus, inmates in need of MRI imaging for purposes of allowing a medical practitioner to make a diagnosis must be referred to an offsite medical facility such as the University of Illinois Urbana-Champaign ("UIC").

**ANSWER:** Defendant admits the allegations in this paragraph.

16.     Upon information and belief, neither Stateville nor Danville have the capability to perform a biopsy to determine whether a mass is cancerous.

**ANSWER:** Defendant denies the allegations in Paragraph 16.

17.     Upon information and belief, defendant Wexford's policies and procedures specify that an inmate should be referred to a neurologist for nerve issues and an orthopedic specialist or an oncologist if the patient has a mass or chronic pain.

**ANSWER:** Defendant denies the allegations of this paragraph.

### *Plaintiff's Ulnar Neuropathy*

18.     In 2014, Plaintiff began to experience numbness, tingling, and severe pain in his right hand.

6

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

19. On or about August 21, 2015, Dr. Martija saw Plaintiff for his annual physical examination. Plaintiff complained about his hand during that appointment. Dr. Martija gave Plaintiff an allotment of Tylenol for his pain. However, the Tylenol did not help the pain or resolve the issues Plaintiff was having with his hand.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

20. On February 10, 2016, Plaintiff saw Dr. Martija regarding the symptoms in his right hand. Dr. Martija documented the pain, swelling, and muscle wasting in Plaintiff's right hand. Dr. Martija gave Plaintiff another allotment of Tylenol for his pain.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

21. Plaintiff saw Dr. Martija again on March 21, 2016 concerning the symptoms in his right hand. Dr. Martija gave him more Tylenol.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

22. On April 18, 2016, Plaintiff saw Dr. Obaisi concerning his right hand. Dr. Obaisi documented Plaintiff's symptoms, and diagnosed him with ulnar nerve neuropathy.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

23. On April 27, 2016, Dr. Obaisi referred Plaintiff for a neurology consultation at UIC concerning his right hand, which Wexford approved on April 28, 2016.

**ANSWER:** Defendant admits the allegations in paragraph 23.

24. However, despite the referral on April 27, 2016, Plaintiff did not have his consultation at UIC until November 4, 2016, over six months later. During the intervening period, Plaintiff's pain, numbness, tingling, and atrophy worsened. During this time, Plaintiff was repeatedly given Tylenol but received no other treatment.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about whether Plaintiff was seen between April 27, 2016 and November 4, 2016. Defendant admits Plaintiff had a consultation at UIC on November 4, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

25. At Plaintiff's November 4, 2016 consult, UIC physician Lexington Culpepper recommended that Plaintiff undergo an Electromyogram (EMG) test and Nerve Conduction Study (NCS), which Wexford approved on November 16, 2016.

**ANSWER:** Defendant admits the allegations of this paragraph.

26. Plaintiff underwent an EMG/NCS exam at UIC on December 13, 2016. That exam revealed Plaintiff was suffering from severe right elbow neuropathy resulting from compression of his ulnar nerve. At that time, UIC physician, Dr. Zeidman, recommended Plaintiff be referred to a hand surgeon for further evaluation. Wexford approved this referral on December 22, 2016.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

27. On December 27, 2016, Plaintiff was given a wrist brace, but this did not alleviate his pain.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

28.     Plaintiff's right hand was not evaluated by a hand surgeon until May 11, 2017, almost five months later. Again, during the intervening period, Plaintiff continued to experience pain, numbness, and tingling in his hand. Additionally, he experienced continuing atrophy and muscle weakness. During this time, Plaintiff had a wrist brace and was given Tylenol but received no other treatment.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about whether Plaintiff's hand was evaluated by a hand surgeon before May 11, 2017. Defendant admits Plaintiff's right hand was evaluated by a hand surgeon on May 11, 2017. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

29.     During the May 11, 2017 evaluation, UIC's hand surgery team recommended Plaintiff undergo surgery on his right hand to decompress his severely entrapped ulnar nerve, which he underwent on June 9, 2017.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

30.     In total, over three years elapsed between Plaintiff's initial complaints of pain, numbness, and tingling in his right hand and Plaintiff's undergoing surgery to alleviate his severe ulnar neuropathy. This included several periods of unexplained and significant delay, including between August 2015 and April 2016, between April 2016 and November 2016, and between December 2016 and May 2017, as described above.

**ANSWER:** Defendant denies any delay or significant delay of treatment. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

31. At all relevant times and with each delay, Plaintiff's pain, numbness, and tingling in his right hand worsened as did the atrophy and muscle wasting in his right hand.

**ANSWER:** Defendant denies any delay in treatment. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

32. Because of these repeated and unjustified delays in treating Plaintiff's ulnar neuropathy, Plaintiff continues to experience chronic pain in his right hand as well as lingering weakness even after having undergone surgery. Plaintiff has permanent damage to his right hand, including arthritis, and muscle and tissue deterioration. Plaintiff also has a long scar as a result of undergoing the operation.

**ANSWER:** Defendant denies any delay of treatment of Plaintiff's ulnar neuropathy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

33. By their repeated, unexplained, and unjustified delays in in providing Plaintiff with adequate medical treatment for his severe ulnar neuropathy, Defendants showed deliberate indifference to Plaintiff's serious medical needs. Additionally, Defendants also showed deliberate indifference to Plaintiff's serious medical needs to the extent Defendants persisted in only giving Plaintiff Tylenol despite it being ineffective in alleviating his pain or treating his underlying condition.

**ANSWER:** Defendant denies delaying in providing Plaintiff adequate medical treatment for his alleged severe ulnar neuropathy. Defendant denies showing deliberate indifference in any way.

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations against the other Defendants. Defendant denies the remainder of the allegations in paragraph 33.

### *Plaintiff's Lipoma*

34.     In or around 2010, Plaintiff noticed a small mass on his right shoulder.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

35.     By 2013, the mass in Plaintiff's right shoulder had grown larger and began to cause Plaintiff pain and physical discomfort. At that time, Plaintiff was unsure whether the mass might be cancerous. Because of its location, the mass in Plaintiff's right shoulder made it difficult for him to lay on his back and in certain positions on his right side, making it difficult for Plaintiff to sleep.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

36.     Plaintiff first sought medical advice regarding this mass sometime in 2013.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

37.     On May 21, 2014, a Stateville nurse noted the lipoma in Plaintiff's right shoulder, but did not refer Plaintiff to a doctor for further examination or treatment of the mass.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

38.     On August 21, 2015, Plaintiff saw Dr. Martija for his annual physical examination. Plaintiff told Dr. Martija about the mass in his right shoulder, and described to her

the pain and physical discomfort it was causing him. Dr. Martija told Plaintiff to monitor the mass, but did not refer Plaintiff to a specialist, order any imaging studies, or order its removal. Dr. Martija gave Plaintiff an allotment of Tylenol for the pain.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

39.     On April 27, 2016, Plaintiff saw Dr. Saleh Obaisi. Although he was there to address the neuropathy issue with his right hand, Plaintiff also told Dr. Obaisi about the mass in his right shoulder, and the pain, physical discomfort, and difficulty sleeping that it was causing him. Plaintiff told Dr. Obaisi that he had previously sought treatment for the mass on multiple occasions, but that he was only given Tylenol for the pain. Plaintiff told Dr. Obaisi that the mass had grown in size since he last saw Dr. Martija. Dr. Obaisi told Plaintiff that he would have the mass removed because it had grown.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

40.     Despite what Dr. Obaisi told Plaintiff on April 27, 2016, Plaintiff did not receive a follow-up medical examination or treatment for the mass in the time period that followed.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

41.     On April 6, 2017, Plaintiff saw a nurse at Stateville concerning the mass. Plaintiff complained of pain, discomfort, and difficulty sleeping that the mass was causing. Plaintiff received a referral to a prison medical doctor for further follow-up.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

12

42.     On April 7, 2017, Plaintiff saw a physician assistant at Stateville concerning the mass. Plaintiff told the physician assistant about the mass and his pain, physical discomfort, and difficulty sleeping. Plaintiff also told the physician assistant that the mass had grown. The physician assistant told Plaintiff that the mass was probably a lipoma and referred him to Dr. Obaisi for further follow-up.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

43.     On April 24, 2017, Plaintiff saw Dr. Obaisi concerning the mass. Plaintiff told Dr. Obaisi that in the time since he last saw him, the mass had grown, the pain and physical discomfort were more pronounced, and that he continued to have difficulty sleeping. Dr. Obaisi told Plaintiff that the mass was probably a lipoma and that it should be examined further. Dr. Obaisi identified the mass as a "large painful intramuscular lipoma" in the "trapezius muscle" measuring "4 x 3 inches." That day, Dr. Obaisi referred Plaintiff for an orthopedic consultation at UIC for further evaluation of Plaintiff's lipoma, which Wexford approved on May 2, 2017.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

44.     Despite Dr. Obaisi's referral and Wexford's approval, Plaintiff was never sent to UIC for an examination or any further treatment of the mass in his right shoulder.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

45.     On November 7, 2018, Plaintiff saw Dr. Marlene Henze, a Wexford physician at Stateville. Plaintiff told Dr. Henze about the mass and the pain and discomfort in his right shoulder resulting from it. Plaintiff expressed concern that it was still growing, and that he was supposed to

have the mass examined by a specialist, and that he did not understand why that had not occurred. Dr. Henze did not refer Plaintiff for a follow-up examination, and instead told Plaintiff that his lipoma was a cosmetic condition and that lipomas do not get removed for cosmetic reasons.

**ANSWER:** Defendant admits that Dr. Marlene Henze is a Wexford physician at Stateville. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

46.     Since moving to Danville, Plaintiff still has not had any orthopedic follow-up concerning his right shoulder mass nor has Plaintiff visited a specialist. Plaintiff's mass has not been imaged or biopsied.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

47.     As of today, the mass in Plaintiff's shoulder continues to cause Plaintiff pain, physical discomfort, and difficulty sleeping.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

48.     Additionally, Plaintiff is still concerned about whether the mass is or could become cancerous. This is causing Plaintiff emotional distress in addition to his physical pain and discomfort.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

49.     By failing to—and continuing to fail to—provide Plaintiff with any treatment for his shoulder mass except for Tylenol, Defendants have shown deliberate indifference to Plaintiff's serious medical needs.

14

**ANSWER:** Defendant denies that Defendants have shown deliberate indifference to Plaintiff. Defendant denies that Plaintiff has serious medical needs. Defendant denies the remaining allegations of this paragraph.

### COUNT I – EIGHTH AMENDMENT VIOLATION
### DEFENDANT DR. MARTIJA – ULNAR NEUROPATHY

50. Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 49 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 49 herein as Paragraph 50.

51. Plaintiff brings Count I against defendant Dr. Martija in her individual and official capacities.

**ANSWER:** Count I paragraph 51 is not directed against this defendant. If the allegations of paragraph 51 are directed against Defendant Wexford, the allegations are denied.

52. Plaintiff suffered from a serious medical need while at Stateville in that he had severe ulnar neuropathy of his right arm that caused him pain, numbness, and tingling. He also experienced atrophy and muscle weakness in his right hand.

**ANSWER:** Count I paragraph 52 is not directed against this defendant. If the allegations of paragraph 52 are directed against Defendant Wexford, the allegations are denied.

53. At all relevant times, defendant Dr. Martija was employed by Wexford as a physician at Stateville, and was responsible for determining the extent of care Plaintiff received for his ulnar neuropathy. Dr. Martija acted under color of state law when she performed her duties.

**ANSWER:** Count I paragraph 53 is not directed against this defendant. If the allegations of paragraph 53 are directed against Defendant Wexford, the allegations are denied.

54. Defendant Dr. Martija knew of Plaintiff's serious medical need. Plaintiff informed Dr. Martija of his symptoms on at least August 21, 2015, February 10, 2016, and March 21, 2016.

**ANSWER:** Count I paragraph 54 is not directed against this defendant. If the allegations of paragraph 54 are directed against Defendant Wexford, the allegations are denied.

55. Despite Dr. Martija's awareness, she was deliberately indifferent to Plaintiff's serious medical needs. In particular, defendant Dr. Martija:

  a.  Did not order procedures necessary to diagnose Plaintiff's ulnar neuropathy;
  b.  Did not timely order necessary and appropriate medical follow-up appointments or treatments including consults by neurological and general surgery specialists;
  c.  Provided Plaintiff with inadequate medical treatment and;
  d.  Ignored or delayed Plaintiff's requests for evaluation and treatment.

**ANSWER:** Count I paragraph 55 is not directed against this defendant. If the allegations of paragraph 55 are directed against Defendant Wexford, the allegations are denied.

56. As a direct and proximate result of defendant Dr. Martija's conduct, Plaintiff endured prolonged pain, numbness, and tingling in his right arm and hand along with worsening atrophy and weakness of his hand. Plaintiff also has permanent damage to his right hand, including arthritis, muscle and tissue deterioration, and a claw hand. The delay in treating Plaintiff's condition exacerbated the permanent damage that occurred.

**ANSWER:** Count I paragraph 56 is not directed against this defendant. If the allegations of paragraph 56 are directed against Defendant Wexford, the allegations are denied.

57. Dr. Martija's conduct constituted deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** Count I paragraph 57 is not directed against this defendant. If the allegations of paragraph 57 are directed against Defendant Wexford, the allegations are denied.

16

## COUNT II – EIGHTH AMENDMENT VIOLATION
### DEFENDANT DR. MARTIJA – LIPOMA

58.     Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 57 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 57 herein as paragraph 58.

59.     Plaintiff brings Count II against defendant Dr. Martija in her individual and official capacities.

**ANSWER:** The allegations in Count II, paragraph 59 are not directed against this defendant. If the allegations of paragraph 59 are directed against Defendant Wexford, the allegations are denied.

60.     Plaintiff suffered from a serious medical need while at Stateville in that he had—and still has—an enlarging mass (lipoma) in his right shoulder causing him pain and physical discomfort. The pain and discomfort caused by Plaintiff's mass also causes him to have difficulty sleeping because he cannot lay on his right side or on his back.

**ANSWER:** The allegations in Count II, paragraph 60 are not directed against this defendant. If the allegations of paragraph 60 are directed against Defendant Wexford, the allegations are denied.

61.     Plaintiff has also experienced—and continues to experience—emotional distress because he remains concerned that his mass might be or become cancerous.

**ANSWER:** The allegations in Count II, paragraph 61 are not directed against this defendant. If the allegations of paragraph 61 are directed against Defendant Wexford, the allegations are denied.

62.     At all relevant times, defendant Dr. Martija was employed by Wexford as a physician at Stateville, and was responsible for determining the extent of care Plaintiff received for his mass. Dr. Martija acted under color of state law when she performed her duties.

**ANSWER:**  The allegations in Count II, paragraph 62 are not directed against this defendant. If the allegations of paragraph 62 are directed against Defendant Wexford, the allegations are denied.

63.     Defendant Dr. Martija knew of Plaintiff's serious medical need. Plaintiff informed Dr. Martija of the mass in his right shoulder and its associated symptoms on at least August 21, 2015, and Dr. Martija documented the mass.

**ANSWER:** The allegations in Count II, paragraph 63 are not directed against this defendant. If the allegations of paragraph 63 are directed against Defendant Wexford, the allegations are denied.

64.     Despite Dr. Martija's awareness, she was deliberately indifferent to Plaintiff's serious medical needs. In particular, defendant Dr. Martija:

   a.     Did not order necessary and appropriate medical follow-up appointments, treatments, or procedures including an MRI of Plaintiff's mass, a biopsy of Plaintiff's mass; or consults by orthopedic, oncological, or other specialists;
   b.     Provided Plaintiff with inadequate medical treatment and;
   c.     Ignored or delayed Plaintiff's requests for evaluation and treatment.

**ANSWER:** The allegations in Count II, paragraph 64 are not directed against this defendant. If the allegations of paragraph 64 are directed against Defendant Wexford, the allegations are denied.

65.     As a direct and proximate result of Dr. Martija's conduct, Plaintiff has endured and continues to endure pain, physical discomfort, and difficulty in sleeping in connection with the mass in his right shoulder.

18

**ANSWER:** The allegations in Count II, paragraph 65 are not directed against this defendant. If the allegations of paragraph 65 are directed against Defendant Wexford, the allegations are denied.

66.     Also as a direct and proximate result of Dr. Martija's conduct, Plaintiff has experienced and continues to experience emotional distress because no imaging nor a biopsy have been performed to confirm his mass is not cancerous.

**ANSWER:** The allegations in Count II, paragraph 66 are not directed against this defendant. If the allegations of paragraph 66 are directed against Defendant Wexford, the allegations are denied.

67.     Dr. Martija's conduct constituted deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** The allegations in Count II, paragraph 67 are not directed against this defendant. If the allegations of paragraph 67 are directed against Defendant Wexford, the allegations are denied.

## COUNT III – EIGHTH AMENDMENT VIOLATION
## DEFENDANT GHALIAH OBAISI – ULNAR NEUROPATHY

68.     Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 67 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 67 herein as paragraph 68.

69.     Ghaliah Obaisi is independent executor of the estate of Dr. Saleh Obaisi. Dr. Obaisi is deceased. (ECF Nos. 20, 28.)

19

**ANSWER:** The allegations in Count III, paragraph 69 are not directed against this defendant. If the allegations of paragraph 69 are directed against Defendant Wexford, the allegations are denied.

70. Plaintiff brings Count III against defendant Ghaliah Obaisi in his individual and official capacities.

**ANSWER:** The allegations in Count III, paragraph 70 are not directed against this defendant. If the allegations of paragraph 70 are directed against Defendant Wexford, the allegations are denied.

71. Plaintiff suffered from a serious medical need while at Stateville in that he had severe ulnar neuropathy of his right arm that caused him pain, numbness, and tingling. He also experienced atrophy and muscle weakness in his right hand.

**ANSWER:** The allegations in Count III, paragraph 71 are not directed against this defendant. If the allegations of paragraph 71 are directed against Defendant Wexford, the allegations are denied.

72. At all relevant times, Dr. Obaisi was employed by Wexford as a physician and medical director at Stateville, and was responsible for determining the extent of care Plaintiff received for his ulnar neuropathy. Dr. Obaisi acted under color of state law when he performed his duties.

**ANSWER:** The allegations in Count III, paragraph 72 are not directed against this defendant. If the allegations of paragraph 72 are directed against Defendant Wexford, the allegations are denied.

73.     Dr. Obaisi knew of Plaintiff's serious medical need. Plaintiff informed Dr. Obaisi of his symptoms on at least April 27, 2016, and Dr. Obaisi diagnosed Plaintiff's severe ulnar neuropathy.

**ANSWER:** The allegations in Count III, paragraph 73 are not directed against this defendant. If the allegations of paragraph 73 are directed against Defendant Wexford, the allegations are denied.

74.     Despite Dr. Obaisi's awareness, he was deliberately indifferent to Plaintiff's serious medical needs.  In particular, Dr. Obaisi:

    a.     Did not timely order and ensure Plaintiff timely received necessary and appropriate medical follow-up appointments or treatments including consults by neurological and general surgery specialists necessary to treat Plaintiff's severe ulnar neuropathy;
    b.     Provided Plaintiff with inadequate medical treatment and;
    c.     Ignored or delayed Plaintiff's requests for evaluation and treatment.

**ANSWER:** The allegations in Count III, paragraph 74 are not directed against this defendant. If the allegations of paragraph 74 are directed against Defendant Wexford, the allegations are denied.

75.     As a direct and proximate result of Dr. Obaisi's conduct, Plaintiff endured prolonged pain, numbness, and tingling in his right arm and hand along with worsening atrophy and weakness of his hand. Plaintiff also has permanent damage to his right hand, including arthritis, muscle and tissue deterioration, and a claw hand. The delay in treating Plaintiff's condition exacerbated the permanent damage that occurred.

**ANSWER:** The allegations in Count III, paragraph 75 are not directed against this defendant. If the allegations of paragraph 75 are directed against Defendant Wexford, the allegations are denied.

21

76.     Dr. Obaisi's conduct constituted deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** The allegations in Count III, paragraph 76 are not directed against this defendant. If the allegations of paragraph 76 are directed against Defendant Wexford, the allegations are denied.

## COUNT IV – EIGHTH AMENDMENT VIOLATION
### DEFENDANT DR. OBAISI – LIPOMA

77.     Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 76 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 76 herein as paragraph 77.

78.     Ghaliah Obaisi is independent executor of the estate of Dr. Saleh Obaisi.  Dr. Obaisi is deceased. (ECF Nos. 20, 28.)

**ANSWER:** The allegations in Count IV, paragraph 78 are not directed against this defendant. If the allegations of paragraph 78 are directed against Defendant Wexford, the allegations are denied.

79.     Plaintiff brings Count IV against defendant Ghaliah Obaisi in his individual and official capacities.

**ANSWER:** The allegations in Count IV, paragraph 79 are not directed against this defendant. If the allegations of paragraph 79 are directed against Defendant Wexford, the allegations are denied.

80.     Plaintiff suffered from a serious medical need while at Stateville in that he had—and still has—an enlarging mass (lipoma) in his right shoulder causing him pain and physical

22

discomfort. The pain and discomfort caused by Plaintiff's mass also causes him to have difficulty sleeping because he cannot lay on his right side or on his back.

**ANSWER:** The allegations in Count IV, paragraph 80 are not directed against this defendant. If the allegations of paragraph 80 are directed against Defendant Wexford, the allegations are denied.

81.    Plaintiff has also experienced—and continues to experience—emotional distress because he remains concerned that his mass might be or become cancerous.

**ANSWER:** The allegations in Count IV, paragraph 81 are not directed against this defendant. If the allegations of paragraph 81 are directed against Defendant Wexford, the allegations are denied.

82.    At all relevant times, Dr. Obaisi was employed by Wexford as a physician and medical director at Stateville, and was responsible for determining the extent of care Plaintiff received for his mass. Dr. Obaisi acted under color of state law when he performed his duties.

**ANSWER:** The allegations in Count IV, paragraph 82 are not directed against this defendant. If the allegations of paragraph 82 are directed against Defendant Wexford, the allegations are denied.

83.    Dr. Obaisi knew of Plaintiff's serious medical need. Plaintiff informed Dr. Obaisi of the mass in his right shoulder and its associated symptoms on at least April 27, 2016 and April 24, 2017, and Dr. Obaisi documented the mass.

**ANSWER:** The allegations in Count IV, paragraph 83 are not directed against this defendant. If the allegations of paragraph 83 are directed against Defendant Wexford, the allegations are denied.

23

84. Despite Dr. Obaisi's awareness, he was deliberately indifferent to Plaintiff's serious medical needs. In particular, Dr. Obaisi:

    a. Did not timely order and ensure Plaintiff timely received necessary and appropriate medical follow-up appointments, treatments, or procedures including an MRI of Plaintiff's mass, a biopsy of Plaintiff's mass; or consults by orthopedic, oncological, or other specialists;

    b. Provided Plaintiff with inadequate medical treatment and;

    c. Ignored or delayed Plaintiff's requests for evaluation and treatment.

**ANSWER:** The allegations in Count IV, paragraph 84 are not directed against this defendant. If the allegations of paragraph 84 are directed against Defendant Wexford, the allegations are denied.

85. As a direct and proximate result of Dr. Obaisi's conduct, Plaintiff has endured and continues to endure pain, physical discomfort, and difficulty in sleeping in connection with the mass in his right shoulder.

**ANSWER:** The allegations in Count IV, paragraph 85 are not directed against this defendant. If the allegations of paragraph 85 are directed against Defendant Wexford, the allegations are denied.

86. Also as a direct and proximate result of Dr. Obaisi's conduct, Plaintiff has experienced and continues to experience emotional distress because no imaging nor a biopsy have been performed to confirm his mass is not cancerous.

**ANSWER:** The allegations in Count IV, paragraph 86 are not directed against this defendant. If the allegations of paragraph 86 are directed against Defendant Wexford, the allegations are denied.

87. Dr. Obaisi's conduct constituted deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** The allegations in Count IV, paragraph 87 are not directed against this defendant. If the allegations of paragraph 87 are directed against Defendant Wexford, the allegations are denied.

**COUNT V – EIGHTH AMENDMENT VIOLATION**
**DEFENDANT WEXFORD – ULNAR NEUROPATHY**

88. Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 87 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 87 herein as paragraph 88.

89. Plaintiff suffered from a serious medical need while at Stateville in that he had severe ulnar neuropathy of his right arm that caused him pain, numbness, and tingling. He also experienced atrophy and muscle weakness in his right hand.

**ANSWER:** Defendant denies that Plaintiff suffered from a serious medical need at Stateville. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

90. At all relevant times, under its contract with the IDOC, defendant Wexford was responsible for maintaining official policies and customs to ensure the adequate provision of medical services at Stateville. Defendant Wexford acted under color of law when it performed this duty.

**ANSWER:** Defendant admits that, under its contract with the IDOC, that at all relevant times the adequate provision of medical services at Stateville occurred. Defendant denies the remaining allegations of this paragraph.

91. Instead, defendant Wexford maintained official policies and actual practices that were deliberately indifferent to inmates' serious medical needs. In particular:

25

a.  To not timely and completely refer inmates with serious medical needs to off-site specialists for evaluations and treatment;

b.  To refuse to refer inmates with serious medical needs to off-site specialists for evaluation and treatment when recommended by other health care providers;

c.  To refuse to refer inmates with serious medical needs to off-site specialists for evaluation and treatment when requested by the inmate;

d.  To ignore inmates serious medical needs which might require off-site evaluation and treatment;

e.  To refuse to order imaging studies such as MRIs which require off-site treatment;

f.  To refuse to order general surgeon consultations which require off-site treatment and;

g.  To refuse to order neurology, orthopedic, oncology, or other consultations which require off-site treatment.

**ANSWER:** Defendant denies the allegations contained in this paragraph 91 and denies subparagraphs a through g.

92.  Defendant Wexford's policies and practices were so prevalent as to have the force of law.

**ANSWER:** Defendant denies the allegations contained in this paragraph 92.

93.  As a direct and proximate result of defendant Wexford's policies and practices, Plaintiff endured prolonged pain, numbness, and tingling in his right arm and hand along with atrophy and weakness of his hand. Plaintiff also has permanent damage to his right hand, including arthritis, muscle and tissue deterioration, and a claw hand. The delay in treating Plaintiff's condition exacerbated the permanent damage that occurred.

**ANSWER:** Defendant denies the allegations contained in this paragraph 93.

94.  Wexford's policies and practices constituted deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** Defendant denies the allegations contained in this paragraph.

## COUNT VI – EIGHTH AMENDMENT VIOLATION
### DEFENDANT WEXFORD – LIPOMA

26

95. Plaintiff restates and incorporates by reference the allegations of Paragraphs 1 through 94 herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1 through 94 herein as paragraph 95.

96. Plaintiff suffered from a serious medical need while at Stateville in that he had—and still has—an enlarging mass (lipoma) in his right shoulder causing him pain and physical discomfort. The pain and discomfort caused by Plaintiff's mass also causes him to have difficulty sleeping because he cannot lay on his right side or on his back.

**ANSWER:** Defendant denies that Plaintiff suffered from a serious medical need while at Stateville. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

97. Plaintiff has also experienced—and continues to experience—emotional distress because he remains concerned that his mass might be or become cancerous.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

98. At all relevant times, under its contract with the IDOC, defendant Wexford was responsible for maintaining official policies and customs to ensure the adequate provision of medical services at Stateville. Defendant Wexford acted under color of law when it performed this duty.

**ANSWER:** Defendant admits that, under its contract with the IDOC, that at all relevant times the adequate provision of medical services at Stateville occurred. Defendant denies the remaining allegations of this paragraph.

99.     Instead, defendant Wexford maintained official policies and actual practices that were deliberately indifferent to inmates' serious medical needs. In particular:

a.      To not timely and completely refer inmates with serious medical needs to off-site specialists for evaluations and treatment;
b.      To refuse to refer inmates with serious medical needs to off-site specialists for evaluation and treatment when recommended by other health care providers;
c.      To refuse to refer inmates with serious medical needs to off-site specialists for evaluation and treatment when requested by the inmate;
d.      To ignore inmates serious medical needs which might require off-site evaluation and treatment;
e.      To refuse to order imaging studies such as MRIs which require site treatment;
f.      To refuse to order general surgeon consultations which require off-site treatment and;
g.      To refuse to order neurology, orthopedic, oncology, or other consultations which require off-site treatment.

**ANSWER:** Defendant denies the allegations contained in this paragraph 99 and denies subparagraphs a through g.

100. Defendant Wexford's policies and practices were so prevalent as to have the force of law.

**ANSWER:.** Defendant denies the allegations of this paragraph.

101. As a direct and proximate result of defendant Wexford's policies and practices, Plaintiff has endured and continues to endure pain, physical discomfort, and difficulty in sleeping in connection with the mass in his right shoulder.

**ANSWER:** Defendant denies the allegations of this paragraph.

102.    Also as a direct and proximate result of defendant Wexford's policies and practices, Plaintiff has experienced and continues to experience emotional distress because no imaging nor a biopsy have been performed to confirm his mass is not cancerous.

**ANSWER:** Defendant denies the allegations of this paragraph.

28

103. Plaintiff has no plain or adequate remedy at law to redress his continued physical and emotional distress associated with the mass, which Wexford has failed to adequately treat.

**ANSWER:** Defendant denies failing to adequately treat the mass. Defendant denies the remaning allegations of this paragraph.

104. Absent relief from this Court, Plaintiff will continue to be irreparably harmed by defendant Wexford's policies and practices because he will continue to experience physical pain, discomfort, and difficulty sleeping as well as emotional distress in association with his enlarging mass.

**ANSWER:** Defendant denies that Plaintiff is entitled to any relief from the court. Defendant denies the remaining allegations of this paragraph.

105. Wexford's policies and practices constitute deliberate indifference to, and reckless disregard of, Plaintiff's serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** Defendant denies the allegations contained in this paragraph.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Compensatory damages from Defendants in an amount to be determined at trial;

B. Punitive damages from Defendants in an amount to be determined at trial;

C. An injunction compelling Wexford to immediately provide Plaintiff with both access to an outside specialist to evaluate his lipoma and adequate long-term medical treatment for his condition;

D. Attorneys' fees and costs;

Any additional relief this Court deems just, proper, and equitable.

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the relief that he seeks in subparagraphs A-D including compensatory damages, punitive damages or any other kind of damages; nor any kind of injunction; nor attorney's fees and costs; nor any other relief.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Complaint (Dkt. 64) with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

**AFFIRMATIVE DEFENSES**

Without prejudice to the denials of the allegations contained in Plaintiff's Amended Complaint (Dkt. 64), Defendant, WEXFORD HEALTH SOURCES, INC., without waiving the obligations of Plaintiff to prove every factual element of his claims, states as and for her Affirmative Defenses as follows:

    **1.**     **Qualified Immunity**

At all times relevant to Plaintiff's claims, the Defendant charged herein acted in the good faith performance of her official duties without violating Plaintiff's clearly established constitutional rights. Defendant is protected from liability by the doctrine of qualified immunity.

    **2.**     **Official Capacity Claim Barred**

To the extent that Plaintiff's claims are against Defendant in its official capacity the claims are barred by the Eleventh Amendment.

    **3.**     **Injunctive Relief Barred**

To the extent Plaintiff is suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his requests for such relief are barred by the Eleventh

Amendment and the Prison Litigation Reform Act. As such, Plaintiff's request for injunctive relief is not recoverable as a matter of law against WEXFORD HEALTH SOURCES, INC. and should be stricken.

**4.      Statute of Limitations**

To the extent that Plaintiff's claims are barred by the statute of limitations, they should be dismissed. Plaintiff's claims are not a continuous course of treatment and have accrued in excess of two years of Plaintiff filing his original pro se complaint.

**5.      *Heck v. Humphrey***

To the extent Plaintiff's allegations require the invalidation of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

**6.      Mootness**

To the extent that Plaintiff is suing the Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his claim is moot.

**7.      Compensatory Damages Barred**

To the extent that Plaintiff is suing the Defendant for compensatory damages for mental or emotional injury suffered without a prior showing of physical injury, his claim is barred by the Prison Litigation Reform Act.

**8.      Failure to State Claim with Specificity**

Defendant's personal involvement has not been established with sufficient specificity to state a claim upon which relief may be granted.

**9.      Res Judicata**

31

To extent Plaintiff has previously litigated the same issues in a prior action that are now involved in this lawsuit, Plaintiff's suit is barred by the doctrine of res judicata.

**10.      Failure to Follow Medical Advice and Exercise Reasonable Care**

a.       The sole proximate cause of the injuries and damages alleged by Plaintiff was his failure to exercise reasonable care for his own well-being.

b.       Plaintiff had a duty to follow reasonable medical advice, recommendations, treatment, or procedures provided to him by medical staff and providers for the treatment and management of his claimed conditions.

c.       Plaintiff failed to exercise reasonable care and follow reasonable medical advice, recommendations, or procedures in one or more of the following respects, which were the sole proximate cause of the injuries and damages Plaintiff claims in this case:

i.       Failed to follow reasonable medical advice and recommendations;
ii.      Failed to be truthful to medical staff and state his symptoms, conditions, and behavior to Defendants;
iii.     Failed to exercise reasonable care for his own safety and well-being;
iv.      Failed to undergo recommended and reasonable medical treatment; and
v.       Was otherwise careless or caused harm to himself.

d.       Plaintiff's actions were the proximate cause of any injuries which are claimed in his Amended Complaint at Law and, therefore, Defendant is not liable to the Plaintiff for the claims asserted herein.

**11.      Failure to State a Claim**

a.       Defendant states that Plaintiff's Third Amended Complaint (Dkt. #42) fails to state a claim upon which relief could be granted pursuant to 42 U.S.C. Section 1983.

b.       To assert a claim for cruel and unusual punishment under the Eighth Amendment of the Constitution, the plaintiff must show (1) deliberate indifference to (2) a serious medical need of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

c.        A private corporation acting under the color of law may be liable under Section 1983 if an official policy or custom of the corporation resulted in the alleged constitutional deprivation. *Monell v. Dep't of Social Svcs. Of City of New York*, 436 U.S. 658, 690-91 (1978).

d.        To state a viable Section 1983 claim against a private corporation acting under the color of state law, a plaintiff must prove that injury was caused by (1) an express policy; (2) a widespread practice constituting a "custom or usage;" or (3) the act of a person with final policymaking authority at the corporation. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008). Plaintiff's allegations regarding the policies and customs of Defendant WEXFORD HEALTH SOURCES, INC. do not rise to the level of a constitutional violation under Section 1983 and, therefore, cannot establish that this Defendant was deliberately indifferent.

**12.        Defendant Acted in Good Faith/Immunity**

a.        At all times relevant herein, Defendant acted in good faith in the performance of its official duties and without violating the Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects this Defendant from this lawsuit. "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7tyh Cir. 2005). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

b.        The United States Supreme Court regards as beneficial, the two-step sequence for resolving a government official's immunity claims articulated in *Saucier v. Katz*, 533 U.S. 194, 200 (2001); see also *Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol

should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…").  First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right.  *Id.* at 232.  Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id.*  In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights."  *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

c.      The Plaintiff's Amended Complaint (Dkt. #64) alleges that Defendant provided medical care and treatment to the Plaintiff while he was incarcerated at a state-run prison.  At no time did any Defendant render medical care that was so clearly a violation of the Plaintiff's constitutional rights that the Defendant would realize it was providing medical care tantamount to cruel and unusual punishment.  Thus, the doctrine of qualified immunity applies and shields this Defendant from this litigation.

d.      The Defendant further recognizes that the Seventh Circuit has suggested, in dicta, that qualified immunity is not available to private medical in state-run prisons.  See *Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016).  However, the United States Supreme Court's decision in *Filarsky v. Delia* controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

e.      In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity.  *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) ("Affording immunity not only to public employees but also to others

34

acting on behalf of the government similarly serves to 'ensure that talented candidates are not deterred by the threat of damages suits from entering public service."') (internal marks omitted.)

f.      Other circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons.  In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison.  *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* – he was a private party hired to do a job for which a permanent government employee would have received qualified immunity.  Thus, we conclude that qualified immunity applies to Dr. Doe.")

g.      The Supreme Court's *Filarsky* decision combined with the case law of other Courts of Appeal establish that qualified immunity applies to private medical providers performing medical services in a state-run prison.  Thus, Defendant has a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Complaint (Dkt. 64) with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

**Defendant Demands that the Case be Tried by a Jury ☑ yes☐ no**

Respectfully submitted,

By:___/s/ Carissa K. Rasch_____
Attorney for Defendants

Robert S. Tengesdal (#6288650)
Carissa K. Rasch (#6327475)
BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street, Suite #2430

35

Chicago, IL 60661
Ph: (312) 253-6200
rtengesdal@bollingertrials.com
crasch@bollingertrials.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2019, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

**Attorney recruited to represent Plaintiff:**
Dennis Abdelnour
Honigman LLP
155 North Wacker Drive
Suite 3100
Chicago, IL 60606
(312) 701-9300
dabdelnour@honigman.com

By:____/s/ Carissa K. Rasch_____

Attorney for Defendants