# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 1204 |
| ) | |
| GHALIAH OBAISI, Executor of ) | |
| The estate of Saleh Obaisi, ) | |
| ALMA MARTIJA, and WEXFORD ) | |
| HEALTH SOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Johnson, an inmate in the custody of the Illinois Department of Corrections currently incarcerated at Danville Correctional Center, has sued Ghaliah Obaisi, executor of the estate of Dr. Saleh Obaisi; Dr. Alma Martija; and Wexford Health Sources, Inc. under 42 U.S.C. § 1983. Johnson alleges that the defendants have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Johnson alleges that treatment was inappropriately delayed for severe ulnar neuropathy in his right arm, resulting in pain and permanent nerve damage, and that he has been denied treatment for a large lipoma on his right shoulder. The Court recruited counsel to represent Johnson.

Johnson has moved for a preliminary injunction requiring evaluation of the lipoma by an outside specialist. The parties filed briefs and evidence, and the Court held an

evidentiary hearing on November 8, 2019 at which Johnson testified via video conference and Dr. Marlene Henze, a physician at Stateville and an employee of Wexford, testified in person. This constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(2).

**Facts**

Johnson has a lipoma on his right shoulder, approximately midway between his neck and the point of the shoulder. A lipoma is a growth of fatty tissue underneath the skin. The lipoma extends distally (i.e., toward the back) from the collarbone region. Its current size is at least 5 inches by 4 inches, and probably a bit larger from what the Court was able to observe via video at the hearing.

Johnson first noticed the lipoma in or about 2010, and it was much smaller at that point. It has grown steadily over the years, and Johnson says that it has consistently caused him pain. Johnson—who knew only that he had a mass on his shoulder and did not know what it was—first sought medical attention for this in 2013.

Johnson, who at the time was incarcerated at Stateville Correctional Center, says that he consistently and repeatedly reported to medical staff at Stateville starting in or about 2013-14 that he was experiencing pain from the mass. The Court found credible Johnson's testimony about experiencing pain from the lipoma and his testimony that he had regularly reported this to medical staff. With some exceptions, Johnson's testimony about feeling pain and reporting it to medical staff is corroborated by medical records prepared by Wexford and other medical staff, including physicians Dr. Martija and Dr. Obaisi.

The most significant corroboration of Johnson's testimony dates to April 2017.

2

Medical records reflect that on April 6, 2017, Johnson consulted a nurse at Stateville about the lipoma and reported throbbing pain, sometimes more when lying down. (The nurse recorded that Johnson said the pain was at a level 2 on a scale of 10, but the Court found credible Johnson's testimony that he reported the pain as ranging from 2 to 5 on a scale of 10). The nurse thought enough of this to refer Johnson to a physician's assistant (PA).

The following day, Johnson saw the PA, who wrote in his notes that Johnson reported pain from the lipoma, particularly when lying down. The PA thought enough of Johnson's medical problem to refer him to Dr. Obaisi, the medical director at Stateville (and a Wexford employee).

Johnson saw Dr. Obaisi on April 24, 2017. His report to Dr. Obaisi regarding his condition and pain, as reflected in Dr. Obaisi's notes, was consistent with what he had told the nurse and the PA. In the section of Dr. Obaisi's notes marked "O" for "objective" findings, he reported that Johnson's lipoma was "painful." It is reasonable to infer, and the Court does infer, that Dr. Obaisi performed the same sort of palpation of the lipoma that Dr. Henze testified that she performed in the latter part of 2018 and that Dr. Obaisi observed a reaction from Johnson that reflected he was actually experiencing pain, not just claiming it verbally. Dr. Obaisi's assessment (recorded under "A" in his notes) was that Johnson had a "large intramuscular lipoma." As the Court understands it from the evidence, this means a lipoma that is not merely a surface or skin-level problem but one that is deeper and implicates the muscle—in this case the trapezius muscle.

Dr. Obaisi took Johnson's case to "collegial review," the process employed by

3

Wexford to determine whether to refer an inmate for outside medical consultation or treatment. As explained by Dr. Henze, this means that Dr. Obaisi consulted with a Wexford physician who was not at Stateville but was able to review Dr. Obaisi's notes. The collegial review process resulted in approval by Wexford of a referral to an outside specialist. The report of Wexford's approval, dated May 2, 2017, states: "Ortho [follow-up] approved by Dr. Ritz in collegial with Dr. Obaisi for a patient with a large, painful intramuscular lipoma in L [sic] trapezius muscle, measuring 4x3 inches. Auth[orized] for Ortho [follow-up] at UIC [Hospital]." In short, it became Wexford's position that outside assessment by a specialist was necessary medical care for Johnson's lipoma.

For reasons that still are not clear, however, Johnson never had the examination of his lipoma by an outside specialist that Wexford had approved. Johnson did go to UIC Hospital on several occasions, but for an unrelated reason. Not too long after his just-referenced April 24 appointment with Dr. Obaisi, Johnson had an appointment at UIC on May 11, 2017 to deal with his right ulnar nerve neuropathy. He was approved for surgery, and he had that surgery—called cubital tunnel release surgery—at UIC Hospital on June 9, 2017. Johnson was seen at UIC Hospital again, this time for surgical follow-up, on June 19, 2017. These appointments were with, and the surgery was performed by, Dr. Gautam Malhotra.

Back to Johnson's lipoma. The handwritten medical record on which Dr. Obaisi approved the referral of Johnson for outside consultation for what Dr. Obaisi referred to as his "large painful intramuscular lipoma" is dated April 24, 2017—the same date that Dr. Obaisi saw Johnson. The handwritten report of what one would have expected to be the appointment resulting from that referral is found at the middle-to-bottom portion

4

of the same document. It is dated November 28, 2017, and it was penned by Dr. Alexandra D'Agostini, a resident at UIC Hospital. Dr. D'Agostini's note, however, makes no mention of the lipoma but rather addresses issues of follow-up from Johnson's June 2017 cubital tunnel release surgery. The same is true of Dr. D'Agostini's typewritten report from the November 28 visit, which reflects that she had seen Johnson along with attending physician Dr. Malhotra—the surgeon who had performed the right cubital tunnel surgery in April 2017. Dr. D'Agostini has confirmed in an affidavit that on November 28, she examined Johnson only for follow-up on the cubital tunnel surgery, more specifically to address his complaint of continued weakness in his right arm and hand. Dr. D'Agostini did not explain in her affidavit (and, presumably, she was unable to explain) why she did not examine Johnson for the lipoma.

Dr. D'Agostini's report—which, again, says nothing about the lipoma—went back to Dr. Obaisi at Stateville for approval. Despite the fact that the top of the report reflects Dr. Obaisi's referral of Johnson for the lipoma, and the middle-to-bottom report reflects a consultation involving something else entirely and making no mention of the lipoma, Dr. Obaisi signed off on the report on November 29, 2017–albeit without checking off either the "approve" or the "deny or revise" box on the form.

Dr. Obaisi has since passed away, and there is no basis in the current record that would permit the Court to determine what exactly went awry here. It is patently obvious, however, that something *did* go awry: Johnson never received the outside consultation for a medical problem that Dr. Obaisi and Wexford had confirmed was "painful" and for which they made a medical determination that outside consultation was

5

required.[1]

Dr. Marlene Henze, a Wexford employee and currently the medical director at Stateville prison, also testified at the preliminary injunction hearing. She first examined Johnson in October 2018, after this lawsuit was already pending. Johnson came to see her for his ulnar nerve neuropathy. Dr. Henze testified that she typically asks inmates at the end of an examination whether there is anything else to discuss and assumes she did so with Johnson on this visit. Her notes do not reflect any mention of Johnson's lipoma or pain from it.

At her next examination of Johnson, on November 7, 2018, she says that Johnson did bring up the lipoma. Dr. Henze testified that she conducted a physical examination, including palpating the lipoma, and that this did not appear to produce pain. Her notes, however, do not reflect this. Rather, with regard to the lipoma, Dr. Henze's notes say only that Johnson "was instructed lipomas do not get removed for cosmetic reasons. Pt. w/ lg lipoma to R post upper shoulder region. Pt. understands." Dr. Henze stated that she did not and does not believe it necessary for Johnson to see an outside specialist for the lipoma, which she views as entirely benign. She also testified that Johnson told her he did not like the way his shoulder looked, and she said that his concern with the lipoma appeared to be exclusively cosmetic. Dr. Henze's

---

[1] At one point prior to the hearing, defendants seemed to suggest that the failure of the UIC physicians to examine Johnson for his lipoma during the UIC examination was somehow Johnson's own fault, because he didn't bring it up. But there is no basis at all for any determination that Johnson would have had any idea that the examination in November 2017—a full seven months after Dr. Obaisi's referral—was supposed to involve the lipoma rather than follow-up for the cubital tunnel surgery that had taken place in the intervening months. Indeed, the appointment at UIC was with the same surgeon who had performed that surgery, which would have indicated to Johnson that that's what the appointment was supposed to involve.

notes, however, do not reflect this either.

**Discussion**

To obtain a preliminary injunction, a plaintiff must establish that he has "some likelihood of success on the merits; that [he] has no adequate remedy at law; [and] that without relief [he] will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.ed 357, 364 (7th Cir. 2019). If the plaintiff fails to meet any of these three threshold requirements, a court must deny the requested injunction. If the plaintiff clears the initial threshold, the court then balances the harm that the plaintiff would experience without an injunction against the harm to the defendant from an injunction and also considers whether an injunction is in the public interest. *Id.* A court "employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *Id.* (internal quotation marks omitted). In addition, under the Prison Litigation Reform Act, which applies here, any injunctive relief must be "narrowly drawn," must go "no further than necessary" to remedy the constitutional violation, and must use the "least intrusive means necessary" to correct the violation of the plaintiff's rights. 18 U.S.C. § 3626(a)(1)(A).

Defendants point out that Johnson is seeking a "mandatory injunction," that is, a preliminary injunction that requires an affirmative act by the defendant. Mandatory injunctions are "ordinarily cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

Johnson's underlying claim is that defendants have violated his right to adequate medical care under the Eighth Amendment. The Eighth Amendment protects a prisoner

7

from a lack of medical care that may result in, or prolong, needless pain and suffering. *See, e.g., Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Liability requires the plaintiff to show that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition. *Id.* Notably, however, Johnson is not required to prove liability at this point; rather he need only show some likelihood of success.

The first issue—whether Johnson suffered from an objectively serious medical condition—is relatively easy for him to establish: it is enough that the condition "is one that has been diagnosed by a physician as mandating treatment." *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019) (internal quotation marks omitted). The condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Johnson's lipoma meets this requirement. Dr. Obaisi himself determined that the lipoma required treatment and confirmed that Johnson was suffering pain; Wexford's "collegial review" consulting physician, Dr. Ritz, confirmed this when he approved Dr. Obaisi's request for outside assessment of the lipoma. In short, we are not dealing here with a difference of views over the application of medical judgment. The medical judgment was exercised when Dr. Obaisi and Wexford referred Johnson for outside treatment for the lipoma. Instead, what is involved here is defendants' failure to follow through on treatment that Dr. Obaisi and Wexford themselves found to be medically necessary.

Dr. Henze's testimony regarding her examination of Johnson in 2018 does not undercut this finding. In particular, her testimony about her palpation of the lipoma is of suspect credibility. None of what she testified about in that regard is referenced in her

8

notes. And she seemingly embellished even further at the hearing by testifying that she believed that Johnson's only concern was cosmetic. This is belied by, among other things, Johnson's repeated, and documented, reports of pain from the lipoma, and by Dr. Obaisi's confirmation of that pain in his April 2017 examination. And although it is certainly possible that Dr. Henze palpated the lipoma in November 2018 and Johnson experienced no pain, even if so the absence of pain on that particular occasion does not undermine his claim, supported by his own credible testimony and other evidence, that the lipoma has caused him significant pain over an extended period of years.

On the question of deliberate indifference, Johnson has likewise established a reasonable likelihood of success. Deliberate indifference requires the defendant to "actually know about yet disregard a substantial risk of harm to an inmate's health or safety. . . . The defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). The Court need not assess here whether there was, or could be, deliberate indifference prior to Dr. Obaisi's and Wexford's ultimate approval of an outside referral for Johnson in April-May 2017. The question before the Court concerns the period after that. Dr. Obaisi was *unquestionably* aware of the need for medical treatment for Johnson's lipoma and the substantial likelihood of ongoing pain absent such treatment: Dr. Obaisi himself so found in April 2017, and his records document this. And upon receipt of UIC's notes in November 2017 documenting that UIC had not provided the necessary assessment that he himself had ordered, Dr. Obaisi did nothing to rectify this but instead signed off on what amounted to a failure of necessary treatment. This epitomizes indifference, and there is at least a reasonable

likelihood that a jury would find the failure to act deliberate on Dr. Obaisi's part.

In sum, Johnson has established a significant likelihood of success on the merits. He has also sufficiently established irreparable harm given his chronic pain. *See Hoban v. Wexford Health Sources, Inc.*, 731 F. App'x 530, 532 (7th Cir. 2018); *Bentz v. Ghosh*, 718 F. Appx 413, 420 (7th Cir. 2018). There is also a sufficient showing that Johnson's remedy at law is inadequate given the likelihood that he will continue to suffer chronic pain pending final resolution of the case.

Johnson has established all of the requirements for a preliminary injunction. And the harm he would experience if an injunction is denied significantly outweighs any potential harm to defendants from granting an injunction. In this regard, it is significant that the Court will merely be directing Wexford to provide the very outside referral that it already authorized. The public interest in vindicating constitutional rights likewise points in favor of entry of an injunction.

The Court has considered defendants' point that a "mandatory" injunction should be imposed only in rare situations. But it is noteworthy here that the Court is, again, ordering only treatment that Dr. Obaisi and Wexford already approved. And that treatment does not—at least at this point—involve removal of the lipoma, but rather simply assessment by an outside specialist. Thus this is not the sort of mandatory injunction that effectively would give the plaintiff the full relief to which he would be entitled upon prevailing on the merits. That aside, this is a case in which a mandatory injunction is appropriate for the reasons the Court has described.

In granting Johnson's motion, the Court finds it somewhat difficult to understand why defendants have so strenuously opposed granting the limited relief that Johnson is

seeking at this point.  Again, the requested relief only involves, at least initially, assessment by an outside specialist.  Anything beyond that likely will be required only if the specialist determines that further treatment is called for.  Because Wexford already approved the outside referral, it is somewhat hard to understand why it now opposes it.  The result has been the expenditure of Wexford's, Johnson's appointed counsel's, and the Court's resources simply to get back to the very spot where Wexford itself expected to be in May 2017 when it approved the outside referral.

The Court will enter a preliminary injunction order that requires Wexford to cause Johnson to be transported to an appropriately qualified specialist physician within the next 45 days for assessment of his lipoma and then report back to the Court.  The Court will entertain a request for further relief upon review of the specialist's findings.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for a preliminary injunction [dkt. no. 66].  The parties are directed to draft a preliminary injunction order that comports with this decision as well as the requirements imposed by Federal Rule of Civil Procedure 65(d) and the Seventh Circuit's recent decision in *MillerCoors LLC v. Anheuser-Busch Cos.*, 840 F.3d 922 (7th Cir. 2019).  A status report with an agreed form of order, or the parties' separate proposed versions if they cannot agree regarding the form of the order, is to be filed by November 20, 2019.  The case is set for a status hearing on November 22, 2019 at 9:30 a.m.

Date:  November 17, 2019

_____
MATTHEW F. KENNELLY
United States District Judge